**MICHAEL A. ARMSTRONG & ASSOCIATES, LLC**
79 Mainbridge Lane
Willingboro, New Jersey 08046
(609) 877-5511
Morrison Kent Fairbairn, Esquire
Attorney for Defendant Officer Rui Pinto

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANTONIO MANATA,** | : |
| | : |
| | : |
| Plaintiff, | :    CIVIL CASE NO.: |
| | : 2:19-cv-09416-SDW-LDW |
| v. | : |
| | : |
| **CITY OF NEWARK, EVARISTO CORDERO,** | : |
| **RUI PINTO** and **ROBBY RIOS,** | : |
| | : |
| Defendants. | : |

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT OFFICER RUI PINTO**

---

Morrison Kent Fairbairn, Esquire
Alexis A. Cotsalas, Esquire
On the brief

**Cases**

Anderson v. Creighton, 483 U.S. 635, 640 (1987)............... 21

Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986)....... 6

Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d
   1358, 1363 (3d Cir. 1992) ..................................... 6

Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 367 (1988) 31,
   32

Dahn v. Hart, 2018 WL 1378940 at *4 (E.D. Pa. March 19, 2018). 10

Dempsey v. Bucknell Univ. 834 F.3d 457, 469 (3d Cir. 2016). 9, 11

Fletcher v. Hook, 446 F.2d 14 (3d Cir. 1971).................. 18

Gallo v. City of Philadelphia, 161 F.3d 217, 223 (3d Cir. 1998) 8

Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014)........ 9

Jarrett v. Township of Bensalem, 312 Fed. Appx. 505 (3d. Cir.
   2009) ....................................................... 17

Jevic v. Coca Cola Bottling, Co. of New York, Inc, 1990 WL
   109851, at *8 (D.N.J. June 6 1990) ......................... 34

Jones v. Morey's Pier, Inc., 230 N.J. 142, 157-58 (2017)...... 27

Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018)
   ............................................................ 18

Lind v. Schmid, 67 N.J. 255, 262 (1975)...................... 29

Lopez v. Swyer, 62 N.J. 267, 276 (1973)...................... 17

Mardini v. Viking Freight, Inc., 92 F. Supp. 2d 378, 384 (D.N.J.
   1999) ...................................................... 31

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574
   (1986) ...................................................... 6

Mayflower Industries v. Thor. Corporation, 15 N.J. Super. 139,
   161-162 (Ch. Div. 1951) ..................................... 28

Mobilio v. Dep't of Law & Public Safety, of N.J., 2009 WL
   2957314, *8 (D.N.J. Sept. 15, 2009) ......................... 29

Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir.
   1995) ...................................................... 10

Pearson v. Callahan, 555 U.S. 223, 237 (2009)................. 21

Perano v. Twp. of Tilden, 423 Fed. appx. 234, 239 (3d Cir. 2011)
   ............................................................ 17

Phillips v. N.J. Transit, Civ. No. 19-13427,2021 WL 1661087, at
   *12 (D.N.N. Apr. 28, 2021) .................................. 31

Poltrock v. N.J. Auto Accounts Management Co., Inc., 2008 WL
   5416396, at *4 (D.N.J. Dec. 22 2008) ....................... 34

Ramos v. Flowers, 429 N.J. Super. 14, 21 (App. Div. 2012)..... 16

Saldana v. Kmart Corp., 260 F.3d 228, 231 (3d Cir. 2001)....... 6

Sauers v. Borough of Nesquehoning, 905 F.3d 711, 716 (3d Cir. 2018) ..................................................... 21

Schneyder v. Smith, 653, F.3d 285, 293 (3d Cir. 2011)......... 7

Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997).......... 10

Sherwood v. Mulvihill, 113 F.3d 396 (3d Cir. 1997)............. 9

Torres v. United States, 200 F. 3d 179, 185 (3d Cir. 1999).... 22

Turner v. Wong, 363 N.J. Super. 186, 200, (App. Div. 2003) 31, 32

U.S. v. Boynes, 149 F.3d 208, 211 (3d Cir. 1998)............... 8

United States v. Foster, 891 F.3d 93, 104 (3d Cir. 2018)....... 8

United States v. Leal, 235 Fed. appx. 937, 941 (3d Cir. 2007).. 7

United States v. Sharpe, 470 U.S. 675, 682 (1985)............. 7

Wilson v. Russo, 212 F.3d 781, 791 (3d Cir. 2000)............ 11

**Statutes**

N.J.S.A. 59:8-4............................................. 26

N.J.S.A. 59:8-8............................................. 26

## PRELIMINARY STATEMENT

Plaintiff, Antonio Manata, has initiated the instant lawsuit against Defendant City of Newark and Defendant Police Officers Evaristo Cordero, Bobby Rios, and Officer Rui Pinto. Five of the six Counts in Plaintiff's Complaint are geared toward Officer Pinto. Now that discovery has been completed, it is abundantly clear that none of the Counts, including malicious prosecution claim that is Plaintiff's primary claim, should survive Summary Judgment. Please see the attached statement of facts for the factual basis of the instant Motion.  Still, the pertinent facts are simple, and can be easily summarized here.

Officer Pinto was acting in the course of his official duties as a police officer, responding to the scene of an assault in-progress, in connection with a 911 call. Once at the scene, Officer Pinto was approached by two eyewitnesses who adamantly exclaimed that they saw Plaintiff punch a resident of Plaintiff's rooming house in the mouth.  The victim, who Officer Pinto found bleeding from the mouth with his teeth missing, specifically identified Plaintiff as his assailant.

Plaintiff, a former City of Newark Police Department Officer himself and an active Clark Police department officer at the time, denied the claims and was never arrested for the assault.  Officer Pinto authored a report that summarized the two contradicted sides of what occurred, but the report did not

4

include the names of any witnesses that Plaintiff wanted in the report.   Plaintiff told the officers at the scene he had witnesses that would corroborate his innocence. Both of the witnesses were interviewed at least once at one time or the other.   Both of Plaintiff's witnesses contradicted Plaintiff's version of events.

Although Plaintiff was ultimately charged with an offense, Officer Pinto was not involved in the investigation that resulted in the charges.   Ultimately the charges were dismissed by the court for reasons unrelated to the merit of the charges. Plaintiff was never disciplined by his police department and never underwent treatment for any psychological trauma.   As the argument below makes clear Plaintiff's claims of malicious prosecution, civil conspiracy, intentional infliction of emotional distress, and invasion of privacy should all be dismissed with prejudice as to Officer Pinto,

## STANDARD OF REVIEW

Procedurally, Federal Rule of Civil Procedure, 56 is the standard of review for a district court's grant of summary judgment. In general, "[u]nder Federal Rule of Civil Procedure 56(c), that test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to

judgment as a matter of law." Saldana v. Kmart Corp., 260 F.3d 228, 231 (3d Cir. 2001).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). On a Motion for Summary Judgment, the facts should be reviewed in a light most favorable to the non-moving party. See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact to avoid summary judgment." See, Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**LEGAL ARGUMENT**

**I.     COUNT ONE OF PLAINTIFF'S COMPLAINT ALLEGING VIOLATIONS OF PLAINTIFF'S CIVIL RIGHTS AGAINST UNLAWFUL SEARCH AND SEIZURE AND MALICIOUS PROSECUTION SHOULD BE DISMISSED WITH PREJUDICE AS TO OFFICER PINTO**

Plaintiff alleges the violation of his Fourth Amendment rights in Count One of his Complaint.  It is unclear whether the unlawful search and seizure Plaintiff rails against Officer Pinto is based on Officer Pinto's only interaction with Plaintiff at Plaintiff's rooming house, the charges that were later brought against Plaintiff by Newark Police department investigators, or both. Regardless, Plaintiff falls far short of satisfying his burden to prove any claim that Officer Pinto violated his federal constitutional rights.

In order for a claim of deprivation of civil rights to prevail, a plaintiff must prove that 1) that the conduct was committed under color of state law and 2) that he was deprived of privileges or immunities of the constitution or laws of the United States.  See, e.g, Schneyder v. Smith, 653, F.3d 285, 293 (3d Cir. 2011).

> **The Supreme Court has set forth an objective standard for determining whether a person has been 'seized' for the purposes of the Fourth Amendment; 'We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in the view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'**

United States v. Leal, 235 Fed. Appx. 937, 941 (3d
Cir. 2007) (quoting United States v. Mendenhall, 446
U.S. 544, 554 (1980)).

Even when the facts show that a plaintiff was detained by
officers for some period of time, the Supreme Court has made
clear that: "the Fourth Amendment is not, of course, a
guarantee against all searches and seizures but only against
unreasonable searches and seizures." United States v. Sharpe,
470 U.S. 675, 682 (1985). Thus, an investigatory stop can be a
seizure, but an officer has not deprived a citizen of any
privileges or immunities if reasonable suspicion exists at the
time of the stop. United States v. Foster, 891 F.3d 93, 104 (3d
Cir. 2018). The reasonable suspicion standard "needs only 'a
minimal level of objective justification.'" Id. (quoting
Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). Significant
deference is given to a law enforcement officer's determination
of reasonable suspicion." Id.

The standard of probable cause must be satisfied for a
seizure to be deemed reasonable where the seizure involves an
arrest. Gallo v. City of Philadelphia, 161 F.3d 217, 223 (3d
Cir. 1998). "**Probable cause [exists when the] facts and
circumstances [are] sufficient to warrant a prudent man in
believing that the [suspect] had committed or was committing an
offense.**" U.S. v. Boynes, 149 F.3d 208, 211 (3d Cir. 1998). A
§1983 malicious prosecution claim is properly understood as an

8

allegation of prosecution without probable cause where the seizure is the mandatory attendance in court. <u>Gallo</u>, 161 F.3d at 222-24. Therefore, to prevail on a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must establish that:

**(1) the defendant initiated a criminal proceeding;**

**(2) the criminal proceeding ended in [the plaintiff's] favor;**

**(3) the defendant initiated the proceeding without probable cause;**

**(4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and**

**(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.**

<u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 296-97 (3d Cir. 2014).

While the issue of probable cause is typically a question of fact, "the district court may conclude in the appropriate case, however, that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." <u>Sherwood v. Mulvihill</u>, 113 F.3d 396 (3d Cir. 1997). "'[T]he evidentiary standard for probable cause is significantly lower than the standard which is required for conviction.' It is therefore irrelevant in a probable cause inquiry 'whether a person is later acquitted of the crime for which she or he was arrested.'" <u>Halsey</u>, 750 F.3d at 299 (3d Cir. 2014) (quoting <u>Wright v. City</u>

9

of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (internal citations omitted)). "[T]he role of the courts is not that of the much-maligned 'Monday morning quarterback' whose critiques are made possible only by the benefits of hindsight." Dempsey v. Bucknell Univ. 834 F.3d 457, 469 (3d Cir. 2016).

Thus, "[a] court must look at the 'totality of the circumstances' and use a 'common sense' approach to the issue of probable cause." Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997). In Sharrar the court was asked to determine if probable cause to arrest a man existed where an officer responded to a 911 call and found a woman injured and bleeding who immediately identified the man as her attacker. Upholding the district court's summary judgment finding, the court reasoned: **"When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest."** Id. at 818; see also Dahn v. Hart, 2018 WL 1378940 at *4 (E.D. Pa. March 19, 2018) (finding that intoxicated victim's identification of the plaintiff still carried the requisite indicia of reliability to support probable cause to arrest).

This is because the issue of whether sufficient probable cause exists to comply with the Fourth Amendment is not determined by whether the underlying investigation was executed professionally, but "whether that information would warrant a reasonable person to believe that an offense has been or is

being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995). Consequently, even where a plaintiff is able to demonstrate a prima facie case that an officer's reckless disregard for the truth resulted in omissions in an affidavit of probable cause, the court must engage in a reconstruction of the affidavit to see if probable cause nevertheless exists. Dempsey v. Bucknell Univ., 834 F.3d at 470. Summary judgment must be granted if, even after including the omitted information, no reasonable jury could find the affidavit lacked probable cause. Id. at 477; See also Wilson v. Russo, 212 F.3d 781, 791 (3d Cir. 2000) (affirming summary judgment where omitted exculpatory facts from arrest warrant did not undermine probable cause based on victim's positive identification).

In the instant case, the Defendant police officers responded to the Plaintiff's property as peace keepers due to an allegation of an assault. Plaintiff cannot plausibly maintain that he was subjected to an unlawful seizure during Officer Pinto's investigation of the assault. Additionally, Officer Pinto's police report provides no basis for Plaintiff's malicious prosecution claim. The amount of information supporting probable cause far exceeded that which is needed for Count One to be dismissed with prejudice.

To the extent Plaintiff asserts he has a claim based on a seizure at a property that he owned, reasonable suspicion would be the applicable standard to any seizure since Officer Pinto was on the premises to investigate a call of an ongoing assault. Clearly, a "minimal level of objective justification", with the complete deference that is due Officer Pinto under Foster, is present where Officer Pinto meets a victim of assault bleeding from his mouth who points to Plaintiff's property and says "*the guy who did this is in there.*" See SOF ¶8. As discussed below, even under a probable cause standard, there was sufficient information for reasonably prudent person in Officer Pinto's position to believe Plaintiff had committed a crime.

Accordingly, Plaintiff's §1983 malicious prosecution claim against Officer Pinto also fails. First, the facts are clear that Officer Pinto did not "initiate the proceeding" against Plaintiff where the criminal complaint was signed by another officer. See SOF ¶54. Moreover, the summons and complaint does cite to Officer Pinto's report as the basis for the charge, but was the result of evidence obtained during a subsequent investigation. Since Officer Pinto had no involvement in the decision to charge Plaintiff, see SOF ¶55, Plaintiff fails to meet the very first prong of his malicious prosecution claim.

More importantly, there was abundant probable cause to arrest and charge Plaintiff if Officer Pinto had been the

charging officer.  Clearly, under the Third Circuit's holding in Sharrar, when Officer Pinto arrived at the scene and found an injured Charles Perkins who specifically identified Plaintiff as his assailant, Officer Pinto had "**probable cause to arrest.**" Officer Pinto' probable cause was not limited to the victim here either as he had two adamant eye witnesses that unequivocally stated they saw Plaintiff assault Mr. Perkins. See SOF ¶¶6-12.

It is also worth noting that no reasonable jury could find that Officer Pinto acted with malice based on the body cam footage.  In fact, Plaintiff himself concedes that he understood the lack of mention of any of his witnesses in Officer Pinto's report to be human error, a mistake. SOF¶ 41, 47.  While Plaintiff may feel the failure to include the statement of a witness who did not see what happened as poor police work, as noted in Orsatti, the issue is not the adequacy of the investigation, but whether the information warranted belief that Plaintiff committed a crime.

As held in Dempsey, the consideration of probable cause in the light of the information Plaintiff argues was improperly omitted from Officer Pinto's report is only warranted if Officer Pinto acted with reckless disregard for the truth.  That is clearly not the case where Officer Pinto questioned both the victim and Plaintiff about what happened multiple times and also sought guidance from both Sgt. Barbosa at the scene and Lt.

Cordero after Officer Pinto was asked to amend his report. Nevertheless, assuming Officer Pinto did act recklessly in not altering his report to include the statement of the witness Plaintiff identified and the fact that Plaintiff had no injuries on his hands, there would still have been probable cause. Plaintiff concedes that the lack of injuries to his hand is not definitive proof he did not strike Mr. Perkins. See SOF ¶30. Moreover, the statement of Plaintiff's witness would have amplified the probable cause.

Officer Pinto was faced with two contrary version of events at the scene.  The two eye witnesses indicated that they saw Plaintiff exit his vehicle; have words with Mr. Perkins; as Mr. Perkins was walking away, Plaintiff called Mr. Perkins back; at which time Plaintiff punched Mr. Perkins in his mouth near the stairs in front of the rooming house *inside* the curtilage of the property. See SOF¶11-12.  Plaintiff conversely claimed he told Mr. Perkins to leave; Mr. Perkins walked away and injured himself when he fell on the sidewalk *outside* the curtilage of the property; Mr. Perkins tried to come back within the curtilage; and after words were exchanged Plaintiff closed the gate and walked inside the house. See SOF ¶¶17, 35.

Plaintiff's witness, Ms. Collins, corroborated the two eye witnesses that said they saw an assault.  Ms. Collins *corroborated* that the incident began when Plaintiff exited his

vehicle and had words with Mr. Perkins; *corroborated* that Mr. Perkins was walking away when Plaintiff called Mr. Perkins back; and *corroborated* that, although she did not see how Mr. Perkins ended up on the ground, Mr. Perkins was laying on the ground **inside** the curtilage of the property near the steps not outside curtilage on the sidewalk. See SOF ¶27.

Plaintiff's other witness, April Jones, did not do Plaintiff any favors either. Ms. Jones told detectives that Plaintiff had a verbal dispute with Mr. Perkins *inside* the curtilage of the property, got into a **physical** confrontation with Mr. Perkins and had to *defend himself*. See SOF ¶49. Thus, far from extinguishing probable cause, the omitted witness testimony would have all but proven that Plaintiff lied to Officer Pinto and was guilty of assault. Plaintiff is fortunate that the matter ultimately resolved the way it did without trial testimony from these witnesses whose accounts were far from exculpatory.

It is abundantly clear, pursuant to deposition testimony, reports and body cam footage regarding the assault on August 20, 2018, that Officer Pinto did not violate Plaintiff's constitutional rights under the controlling case law and as a matter of law. Plaintiff cannot prove that Officer Pinto deprived him of a constitutional right based on his allegations against Officer Pinto. Therefore, and for the foregoing

reasons, Count One should be dismissed with prejudice as to Officer Pinto.

**II.   COUNT TWO OF PLAINTIFF'S COMPLAINT ALLEGING FEDERAL AND CIVIL CONSPIRACY SHOULD BE DISMISSED WITH PREJUDICE AS TO OFFICER PINTO**

Count Two of Plaintiff's Complaint alleges that Officer Pinto entered into a conspiracy with the other named Defendants to violate Plaintiff's federal and state constitutional rights. It appears the basis for Plaintiff's claim is Officer Pinto's decision not to alter his report to favor Plaintiff after discussing the issue with Lt. Cordero and Officer Rios.   Since the facts neither support a deprivation of Plaintiff's rights nor a concerted action for an unlawful purpose, Count Two must be dismissed.

The New Jersey Civil Rights Act ("NJCRA") was "designed as a State analog to the federal civil rights statute codified at 42 U.S.C. § 1983," and to "fill in any gaps in state statutory anti-discrimination protection." Ramos v. Flowers, 429 N.J. Super. 14, 21 (App. Div. 2012).   Accordingly, it is well established that New Jersey courts have consistently examined cases arising under the New Jersey Civil Rights Act in accordance with the jurisprudence of the federal act it was modeled after, 42 U.S.C. §1983. Id. at 23.   Consequently, the appropriate analysis that leads to the inevitable conclusion

that Plaintiff has not demonstrated a viable claim that Officer Pinto is liable to Plaintiff for engaging in an unlawful conspiracy under the NJCRA is the same as under §1983.

"[A]s a threshold matter . . . a §1983 conspiracy claim only arises where there has been an actual deprivation of a right." Perano v. Twp. of Tilden, 423 Fed. appx. 234, 239 (3d Cir. 2011). "[T]he gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong, which absent the conspiracy, would give a right of action." Lopez v. Swyer, 62 N.J. 267, 276 (1973) (quoting Board of Education Asbury Park v. Hoek, 38 N.J. 213, 218 (1962)).

The Third circuit addressed the issue of whether a plaintiff has a right to a complete and accurate police report in Jarrett v. Township of Bensalem, 312 Fed. Appx. 505 (3d. Cir. 2009). In Jarrett, the Plaintiff filed suit alleging a civil rights violation based on a false police report and argued that the report caused him to become subject to a personal injury lawsuit filed by the other motorist.  The Third Circuit affirmed the district court's ruling that there was no constitutional right to a correct police report, holding that **"the mere existence of an allegedly incorrect police report fails to implicate constitutional rights."** Id. at 507. The Court also noted that other circuits have come to the same conclusion in

holding that a false police report does not deprive a person of a constitutional right. Id.

> "**After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right**," the rule is clear that the plaintiff "**must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.**"
>
> Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018) (quoting Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184-85 (3d Cir. 2009)).

A plaintiff cannot rely on conclusory assertions to prove a claim of conspiracy to violate his constitutional rights, but rather must demonstrate collusion with specific factual allegations. Fletcher v. Hook, 446 F.2d 14 (3d Cir. 1971). When the allegation is a conspiracy among police officers, "it may manifest as 'conversations' between officers about the incident, 'allegedly distorted' stories that 'emerged,' an 'awareness of conflicting stories' and 'irregularities in the series of official investigations' into the incident." Jutrowski, 904 F.3d at 295 (3d Cir. 2018) (holding that summary judgment was appropriate where the plaintiff's before-the-fact conspiracy claims were unsupported by the record . . . making a meeting of the minds implausible).

Here, the civil conspiracy claim does not appear to be based on anything that happened on the day Officer Pinto interacted with Plaintiff at Plaintiff's rooming house since

Plaintiff's position is that Officer Pinto failed to go along with what Plaintiff believes Sgt. Barbosa, who Plaintiff grew up with (see SOF ¶22), wanted Officer Pinto to do. Also, since Plaintiff has no evidence that Officer Pinto had any involvement in the subsequent investigation of Plaintiff's assault of Mr. Perkins or the charges that were ultimately brought, Plaintiff's conspiracy claim against Officer Pinto cannot be connected to Plaintiff's gripe with how those matters were handled. That leaves only the discussion that Officer Pinto had with Officer Rios and Lt. Cordero where it was determined that Officer Pinto would not amend his report at the behest of Sgt. Silva. Those facts fail to establish an actionable conspiracy claim.

The alleged conspiracy can only be couched as a conspiracy to not render Officer Pinto's report complete and accurate by including Plaintiff's witnesses. As held in Jarret, Plaintiff has no constitutional right to a complete report and Officer Pinto's decision at the direction of Lt. Cordero to not to alter the report to Plaintiff's satisfaction did not deprive Plaintiff of any right under the federal or state constitution. Accordingly, as noted in Perano, Plaintiff's conspiracy claim must be dismissed on that basis alone.

Furthermore, even if there were an actual deprivation of right at issue, Plaintiff fails to establish the agreement and concerted action required for a conspiracy. Plaintiff has not

proffered evidence of conversations between officers, distorted stories, or irregularities in investigating the incident that the Third Circuit has noted as the common way in which conspiracy claims are established against police officers. As deemed insufficient in <u>Fletcher</u>, Plaintiff offers nothing but his conclusion that there must have been a conspiracy.

To the contrary, the facts are that Officer Pinto sought direction from a superior officer on the appropriate procedure and was advised that it would be improper to alter a report based on the request of another superior officer who should not have been involved in the matter due to a conflict of interest. Plaintiff even blames Lt. Cordero for the entire issue recognizing it would have been improper for Officer Pinto to defy his superior on a matter of report writing. See SOF ¶47. The decision between defendants was to ultimately do nothing. Therefore, there was no concerted action between Defendants.

The only agreement and concerted action involved in this matter was Plaintiff's attempt to alter the report by reaching out to his business partner, Sgt. Silva, and having him convince Officers Rios and Pinto to change their report. Sgt. Silva used his influence as an Internal Affairs Sergeant to pressure the young officers into making changes that favor his business partner. Plaintiff's conspiracy to avoid assault charges failed because Officer Pinto did not agree and refused to act in

concert with Plaintiff and Sgt Silva.  In the end, Officer Pinto paid the price for doing what he believed was right by having an Internal Affairs investigation sustained against him and facing administrative charges.

Ultimately, Plaintiff's conspiracy claim is subject to dismissal at this juncture because there was no deprivation of Plaintiff's rights underlying the alleged conspiracy whether focused on the incomplete report as argued here or after considering the broader probable cause that supported the bringing of charges as discussed in Point I above. Furthermore, the facts do not support any agreement or concerted action between Defendants.  Consequently, Count Two of the Complaint should be dismissed with prejudice as to Officer Pinto.

### III. **OFFICER PINTO IS ENTITLED TO QUALIFIED IMMUNITY AS TO COUNT ONE AND TWO OF PLAINTIFF'S COMPLAINT**

Before considering any defenses that an officer has to liability in a case alleging the violation of constitutional rights, a court should determine whether the officer is immune from suit under the doctrine of qualified immunity.  Pearson v. Callahan, 555 U.S. 223, 237 (2009).  The doctrine applies to bar the imposition of liability against an officer unless the official's conduct violated a clearly established constitutional right. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

> **Thus, courts assessing a claim of qualified immunity must answer two questions. One is whether the defendant's conduct violated a statutory or constitutional right. The other is whether the right at issue was clearly established when the conduct took place.**

> Sauers v. Borough of Nesquehoning, 905 F.3d 711, 716 (3d Cir. 2018).

In the context of a case alleging constitutional violations under the Fourth Amendment, a court need not proceed any further and must grant qualified immunity to an officer where the facts show that the plaintiff was treated lawfully by the officer. Torres v. United States, 200 F. 3d 179, 185 (3d Cir. 1999). Nevertheless, the protection still applies when an official's error is a mistake of law, a mistake of fact or a mistake based on mixed questions of law and fact. Id.

In Torchinsky v. Swinski, the defendant police officer sought qualified immunity protection after he sought the arrest of the plaintiffs who were identified as the assailants of an alleged victim of a brutal assault. 942 F.2d 257, 259 (4th Cir. 1991. The court began its analysis by noting the importance of the qualified immunity protection in these types of cases:

> **The grant of qualified immunity to government officials ensures that officials can perform their duties free from the specter of endless and debilitating lawsuits. . . . These concerns are particularly acute when the officials are police officers investigating a crime of violence. The police must have the ability to move quickly to solve the crime before the evidence becomes stale, a victim-witness dies, or the perpetrator has a chance to**

> **repeat the crime. The ability of police officers to protect the public can be severely hampered, however, if their every decision is subject to second-guessing in a lawsuit.**
>
> **To guard against these crippling effects, the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." Thus, a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment.**
>
> Id. at 260-61 (quoting Anderson, 483 U.S. at 646 n. 6).

Ultimately, the court held that the officer was entitled to qualified immunity despite the plaintiffs' slight build making it unlikely they could have committed the assault and the officers alleged failure to pursue potentially exculpatory evidence because the officer reasonably acted on the victim's specific identification, sought the advice and judgment of his supervisor, and obtained the arrest warrant from a neutral magistrate. Id. at 264.

In the instant matter, it is not clear what constitutional right Plaintiff alleges was violated by Officer Pinto, except what he believes was a poorly written police report. As discussed in Points I and II above, neither that allegation nor any of the facts established in this case support that Officer Pinto violated Plaintiff's constitutional rights at any time. For the sake of argument, even if Plaintiff could make a case that Officer Pinto's conduct violated a constitutional right,

Officer Pinto remains immune from this suit because Plaintiff cannot demonstrate that the right was clearly established at the time and was not the result of a reasonable mistake.

As required by the Third Circuit in Torres, this Court need not proceed any further on the analysis of whether Officer Pinto is entitled to qualified immunity because the video footage covering Officer Pinto's entire interaction with Plaintiff proves that Officer Pinto treated Plaintiff in an entirely lawful matter.  As Plaintiff conceded, Officer Pinto remained professional during his interaction with Plaintiff. See SOF ¶37. Officer Pinto's only connection to the charges against Plaintiff was his report and Plaintiff had no right, much less a clearly established right, to tell Officer Pinto how he should or should not write a police report.  Moreover, as the Supreme Court has made clear in Pearson, to survive the instant motion Plaintiff must persuade the Court that Officer Pinto is not entitled to qualified immunity protection because Officer Pinto's error was not a mere mistake of law or fact.  Plaintiff has conceded that point away having testified that Officer Pinto's deficient report was "human error" and a "mistake" that he wanted corrected. See SOF ¶¶41 and 47.

Thus, the appropriateness of qualified immunity is even more clear here than in the Torchinsky case.  While Officer Pinto was not even the investigating or charging officer in this

case, like the _Torchinsky_ detective, Officer Pinto's actions are clearly protected where he reasonably recorded the account of an alleged assault victim who specifically identified Plaintiff at the scene in a quickly moving situation.   Just like the plaintiffs' slight build in the _Torchinsky_ case was not enough to deem the detective's reliance on the victim unreasonable, Plaintiff's uninjured hands were not enough to find that Officer Pinto's decision to consider Mr. Perkins a potential victim of assault by Plaintiff was unreasonable.

Whereas in _Torchinksy_ the detective reasonably relied on one superior officer, Officer Pinto sought the advice of not one, but two supervisors on how to complete his report.   Sgt. Barbosa told Pinto to note Mr. Perkins as the victim, to include the two eye witnesses to the assault and to include Plaintiff's version of events in his report before letting it all play out. See SOF ¶¶21 and 25.   Lt. Cordero similarly advised Officer Pinto to not alter his report due to Sgt. Silva's conflict and to allow it to play out with the detectives investigating the case. See SOF ¶¶44-46. Officer Pinto followed the advice of his supervisors and reasonably believed the best course of action was to leave his report as written reflecting the two sides of what occurred because probable cause to charge Plaintiff with a crime would be independently established or extinguished by the investigating detectives.

Therefore, as the <u>Torchinsky</u> court reasoned, the Court should reject Plaintiff's invitation "to second-guessing in a lawsuit" and find that Officer Pinto is immune from suit. Even if Plaintiff could establish the deprivation of his constitutional rights based on his allegations against Officer Pinto, Officer Pinto is immune from Counts One and Two of Plaintiff's Complaint under the doctrine of qualified immunity. As a result, Counts One and Two should be dismissed with prejudice as to Officer Pinto.

## IV.   **PLAINTIFF'S TORT CLAIMS BROUGHT IN COUNTS THREE, FOUR AND FIVE SHOULD BE DISMISSED WITH PREJUDICE FOR FAILURE TO SUBMIT A PROPER TORT CLAIM NOTICE**

Plaintiff filed a Tort Claim Notice on April 3, 2019, naming Officer Pinto, regarding events that occurred at Plaintiffs rooming house on August 20, 2018. In his complaint Plaintiff brings three torts.  Count Three alleges malicious prosecution, Count Four alleges intentional infliction of emotional distress and Count Five alleges invasion of privacy. The New Jersey Tort Claims Act requires an individual with a potential claims against a public entity or employee to file said claim within 90 days of the alleged occurrence. <u>N.J.S.A.</u> 59:2-2.  In particular, <u>N.J.S.A.</u> 59:8-4 sets forth that a claim must include the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

26

N.J.S.A. 59:8-8 states that a "claimant shall be **forever barred** from recovering against a public entity **or public employee**" if the claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as permitted in N.J.S.A. 59:8-9.  See Jones v. Morey's Pier, Inc., 230 N.J. 142, 157-58 (2017)(holding that a claimant who fails to serve a timely notice of claim is barred from bringing a claim against a public entity or public employee).

Plaintiff failed to comply with the statute with respect to his malicious prosecution claim against Defendant Officer Rui Pinto.  Plaintiff cannot proffer any proof that Officer Pinto knew Plaintiff was charged in relation to the August 2018 incident. See SOF ¶55. Plaintiff's Tort Claim is insufficient as a matter of law. It did not cite the exact date, specific location and particulars of the incident that gave rise to the Plaintiff filing his Complaint.  Since Officer Pinto had no knowledge of the prosecution against Plaintiff, it was insufficient to give Officer Pinto sufficient notice of the claim.

Plaintiff's intentional infliction of emotional distress claim needed to be filed within ninety days of August 20, 2018, pursuant to the statute.  Any intentional act by Pinto would have occurred on that date. At the very latest, the last act by Officer Pinto against Plaintiff was the decision not to amend

his report days after the incident.  Since April 2019 was well beyond ninety days following that action, Plaintiff's IIED claim must be dismissed pursuant to statute.

Plaintiff was similarly out of time with regards to any allegation of an invasion of privacy.  Again, the only invasion of privacy that could have been committed by Officer Pinto occurred on August 20, 2018.  Furthermore, no particulars or specifics regarding any supposed invasion of privacy were noted in Plaintiff's Notice of Claim.

For the foregoing reasons all three tort alleged in Counts Three, Four and Five should be dismissed with prejudice as to Officer Pinto for failure to satisfy the TCA notice requirement.


**V.   COUNT THREE OF PLAINTIFF'S COMPLAINT ALLEGING MALICIOUS PROSECUTION OR ABUSE OF PROCESS SHOULD BE DISMISSED WITH PREJUDICE AS TO OFFICER PINTO**

Plaintiff alleges the Defendant officers injured him by maliciously filing a criminal complaint against him without probable cause.  It appears that the Plaintiff seeks recovery of damages due to the bringing and maintenance of the action for malicious prosecution itself.  However, Plaintiff cannot meet the elements necessary for his civil claim to succeed.

It is generally accepted that in order to bring and maintain an action for malicious prosecution, the proceeding must have been concluded in Plaintiff's favor.  Mayflower

Industries v. Thor. Corporation, 15 N.J. Super. 139, 161-162 (Ch. Div. 1951).

> **If plaintiff fails to prove any one of the following elements, his malicious prosecution action must fail: (1) that the criminal action was instituted by defendant against plaintiff; (2) that it was actuated by malice; (3) that there was an absence of probable cause for the proceeding; (4) that it terminated favorably to plaintiff. Each element is separate from the others, although evidence of one may be relevant with respect to another. Even though the essence of the cause of action is lack of probable cause...**

See, Lind v. Schmid, 67 N.J. 255, 262 (1975).

Additionally, "[p]robable cause is an absolute defense to a claim of malicious prosecution under state and federal law." Mobilio v. Dep't of Law & Public Safety, of N.J., 2009 WL 2957314, *8 (D.N.J. Sept. 15, 2009)

In the instant case, Defendant Officer Pinto did not initiate the criminal proceeding against Plaintiff. By Plaintiff's own admission, the criminal complaint filed against him was signed by Detective Natasha Green, not Officer Rui Pinto. See SOF ¶54. The decision to prosecute Plaintiff was one of prosecutorial discretion not an action commenced by officers. Plaintiff's claim fails on the first element of his claim.

Malice is the second prong of the analysis. Defendant Officer Rui Pinto first entered Plaintiff's on August 20, 2018, when he was called to Plaintiff's rooming house for an alleged assault. See SOF ¶5. Defendant officers announced themselves to

Plaintiff and asked for identification. See SOF ¶14-16.   The
interaction and conversation indicate that this was a first
meeting between Plaintiff and Officer Pinto. After writing his
initial report Officer Pinto believed any further investigation
would be handled by detectives. See SOF ¶46.   Officer Pinto's
interaction with Plaintiff was professional. See SOF ¶37. Even
if Defendant had brought the action, which he had no authority
to initiate, the evidence indicated that there was enough
probable cause to sustain a Complaint against Plaintiff. In
addition to Defendant Pinto's police report there was eyewitness
testimony, body cam footage and sworn testimony all of which
supported probable cause. See SOF ¶5-13.

Although the action was terminated favorably for the
Plaintiff, he cannot satisfy each of the elements necessary for
his claim to prevail. Therefore Count Three should be dismissed
with prejudice as to Defendant Officer Pinto.


**VI.   COUNT FOUR OF PLAINTIFF'S COMPLAINT ALLEGING
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE
DISMISSED WITH PREJUDICE AS TO OFFICER PINTO**

Plaintiff alleges intentional infliction of emotional
distress in Count Four of his Complaint.   He primarily claims
that Defendant Officers Rios and Pinto acted intentionally,
recklessly, and purposefully to cause Plaintiff emotional
distress with the knowledge that Plaintiff would suffer

emotional damage as a result.  However, Plaintiff contradicts himself and states that the Officers acted professionally. See SOF ¶37.

"[T]o establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause and distress that is severe." Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 367 (1988).  A claim of intentional infliction of emotional distress requires proof 1) of the defendant's intent to commit the act complained of and the cause emotional distress; 2) of conduct that is so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized  community; 3) that the defendant's actions was proximate cause of the plaintiff's emotional distress; and 4) the emotional distress was so severe that no reasonable [person] could be to endure it.  Id.

A plaintiff's distress must be "so severe that no reasonable person could be expected to endure it," Mardini v. Viking Freight, Inc., 92 F. Supp. 2d 378, 384 (D.N.J. 1999), and requires a plaintiff to show "that they suffered from a specific ailment and sought treatment for it." Phillips v. N.J. Transit, Civ. No. 19-13427, 2021 WL 1661087, at *12 (D.N.N. Apr. 28, 2021), defines severe emotional distress as:

**[a] severe and disabling mental or emotional condition which  is capable of being recognized and diagnosed by professionals trained to do so."**

Turner v. Wong, 363 N.J. Super. 186, 200, (App. Div. 2003). Mere allegations of "aggravation, embarrassment, and unspecified number of headaches and loss of sleep," are insufficient as a matter of law to support a finding of severe mental distress that no reasonable person could be expected to endure. Ibid.

Consequently, the court in Turner found the plaintiff did not meet her burden to prove severe emotional distress where she never sought any medical, psychological, or other professional treatment. Id at 202. The heightened standard of proof that is required for intentional infliction of distress claims facilitates the dismissal of claims that do not involve objective proof of severe emotional distress. "By circumscribing the cause of actions with an elevated threshold for liability and damages, the courts have authorized legitimate claims while eliminating those that should not be compensable." Buckley, 111 N.J. at 367.

In the instant case, Plaintiff's alleged emotional distress does not rise to the level of a compensable injury. Aside from any intent on Officer Pinto's part to harm Plaintiff, Plaintiff fails to show that he "suffered from a specific ailment and sought treatment for it" as required by Phillips. Since

Plaintiff sought no treatment for any emotional ailments, Plaintiff cannot meet his burden of proof as a matter of law.

Plaintiff's belief that he received an unfavorably written police report, is not sufficient to glean intent to cause emotional distress. Police Officer Pinto's conduct was reasonable in that he did his job, and acted professionally. See SOF ¶37. Plaintiff cannot prove that Officer Pinto's conduct in any way caused Plaintiff to have emotional damages of the character and nature that were so severe that no reasonable person could be expected to endure it, such that they ultimately sought treatment for the same. In keeping with <u>Mardini</u>, Plaintiff was not unbearably harmed, nor did he seek treatment for a specific ailment caused by the harm.

Similarly to the plaintiff in <u>Turner</u>, Plaintiff ought no medical treatment and has no medical diagnosis that would indicate any sort of emotional trauma such that it is debilitating and cognizable by a medical professional. Plaintiff continues to work, maintains a home life, and suffered no permanent disabilities as a result of his encounter with the Defendant Officers. Therefore, Plaintiff's claim of intentional infliction of emotional distress asserted in Count Four of the Complaint should be dismissed as to Officer Pinto.

## VII. <u>COUNT FIVE OF PLAINTIFF'S COMPLAINT ALLEGING INVASION OF PRIVACY SHOULD BE DISMISSED WITH PREJUDICE AS TO OFFICER PINTO</u>

Plaintiff alleges in his complaint that he was the subject of an invasion of privacy by Officers Pinto and Rios. The officers only entered Plaintiff's rooming house and the surrounding premises on August 20, 2018. They responded to Plaintiff's address to investigate a 911 call, of an alleged assault in progress at the property. See SOF ¶5. The presence of the officers at Plaintiff's rooming house was a necessary peace keeping activity.

"New Jersey recognizes four related invasion of privacy torts: (1) unreasonable intrusion upon seclusion; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to one's private life; and (4) false light invasion of privacy." <u>Jevic v. Coca Cola Bottling, Co</u>. of New York, Inc, 1990 WL 109851, at *8 (D.N.J. June 6 1990). New Jersey courts have "long recognized' that the right to privacy includes claims for "intrusion upon seclusion." <u>Poltrock v. N.J. Auto Accounts Management Co., Inc.</u>, 2008 WL 5416396, at *4 (D.N.J. Dec. 22 2008); <u>see also</u> <u>N.O.C. v Schaefer</u>, (N.J. Super. Ct. Law Div. 1984) (noting that "the right of privacy encompasses the right to be protected from a wrongful intrusion which would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities"). "At the

crux of an intrusion claim must be an allegation that a plaintiff's personal and private affairs have been pried into by the defendant" and "liability attached the moment a plaintiff's privacy has been breached, whether it be physical or otherwise." Poltrock at *5.

Since an alleged intrusion must be "highly offensive to a reasonable person" and "[n]ot withstanding a plaintiff's subjective expectations of privacy, a court must determine whether objectively given the facts and circumstances of the particular case, a person would reasonably believe he has an expectation of privacy." Id. ""Where a defendant's action is properly authorized or justified by circumstances, it may be found reasonable and non-actionable, even though it amounts to a slight invasion of the plaintiff's privacy."" N.O.C.   See also Rowe v. Mazel Thirty, LLC, 34 A. 3d 1248, 1255 (N.J. 2012), it is well-established that "officers performing their official duties . . .enter pursuant to a public right."

Here, Plaintiff's whole argument is that his privacy was intruded upon when Officers Pinto and Rios entered his rooming house, in response to the 911 call. See SOF ¶5. Plaintiff, a police officer himself, is aware that officers had a right to enter his property to investigate a police matter.  Plaintiff's argument fails there.

As in Rowe, Defendant Officers entered Plaintiff's property in performance of their official duties and had a public right to enter Plaintiff's property. Furthermore as in N.O.C., Defendant Officer Pinto and Rios' presence at Plaintiff's property must be assessed or justified by the circumstances. In the instant case the situation and circumstances were such that the Officers' presence was not only acceptable but necessary, from an objective and reasonable person's standard. Unlike Poltrock, in the instant case, Plaintiff was not subject to any wrongful intrusion and even if it had been wrongful, which it was not, it was not so offensive of an intrusion that a reasonable person would be harmed by such a slight intrusion.

Therefore, when Plaintiff's claims are assessed, any reasonable court or jury would find Plaintiff's subjective expectations of privacy, insufficient to meet Plaintiff's burden of proof. Ultimately, because Defendants were performing their official duties, at Plaintiff's property, the Officer Pinto's presence was justified and Plaintiff's intrusion upon seclusion claim should be dismissed.

For the foregoing reasons, Count Five should be dismissed with prejudice as to Officer Pinto.

## CONCLUSION

For the foregoing reasons, Defendant, Officer Rui Pinto, respectfully requests that Summary Judgment be entered as to all Counts raised against him in Plaintiff's Complaint.

Respectfully submitted,

**MICHAEL A. ARMSTRONG & ASSOCIATES, LLC**

By:**_/s Morrison Kent Fairbairn_**
　　Morrison Kent Fairbairn, Esquire
　　Attorney for Defendant
　　Officer Rui Pinto

Dated: February 25, 2022